UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K.L., a Minor,

   Plaintiff,            Hon. Janet T. Neff

v.                  Case No. 1:09 CV 52

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

   The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on August 22, 1998. (Tr. 14). On May 26, 2005, Plaintiff submitted an application for disability benefits, asserting that he has been disabled since birth, due to a heart murmur, behavior problems, and "irregular brain waves." (Tr. 41-43, 76). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-81). On July 1, 2008, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff's mother. (Tr. 343-58). In a written decision dated July 18, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 11-22). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## MEDICAL BACKGROUND

On December 27, 2004, Plaintiff participated in an EEG examination, the results of which revealed "occasional left and rare right central temporal sharp discharges. . .consistent with so-called benign Rolandic sharp activity." (Tr. 90).

School records completed during the 2004/2005 academic year indicate that Plaintiff experienced "a difficult time focusing attention," but that he "has made progress in his academics." (Tr. 137).

3

On February 8, 2005, Plaintiff was examined by therapist Richard Dines. (Tr. 95-100). Plaintiff's mother reported that Plaintiff is "very hyper and at times aggressive." (Tr. 95). She also reported that Plaintiff was performing poorly at school. (Tr. 95). Dines reported that Plaintiff was cooperative and exhibited "normal" behavior. (Tr. 97). Plaintiff's speech was "normal, relaxed" and his thought process/content was "appropriate." (Tr. 98). Plaintiff exhibited "normal" memory, attention, and concentration. (Tr. 99). His general knowledge and intellectual functioning abilities were rated as "average." (Tr. 99). Plaintiff was diagnosed with "Disorder of Childhood" and his GAF score was rated as 65.[1] (Tr. 99-100). The therapist recommended that Plaintiff and his family participate in therapy. (Tr. 100).

On April 13, 2005, Plaintiff participated in an EKG examination, the results of which were "within normal limits." (Tr. 85).

On June 16, 2005, Plaintiff and his mother participated in an interview with a Social Security official. (Tr. 72-81). The official characterized Plaintiff as a "developmentally appropriate 7 year old male" who "sat quietly and calmly during the interview, coloring in a coloring book, while smiling happily at his mother." (Tr. 74). The official further reported that "when done coloring [Plaintiff] sat and listened quietly to the interview" and "responded to questions. . .with a normal tone and reaction." (Tr. 74).

On July 9, 2005, Plaintiff was examined by Dr. Sarabjit Tokhie. (Tr. 252-55). A mental status examination revealed the following:

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 65 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 32.

> [Plaintiff] was restless, made poor eye contact, kept looking around, and came across as a very intelligent child. He lacked verbal spontaneity and often stated, "I can't remember" and then answered the question at times. He was also not very forthcoming. His speech was clear and coherent with no evidence of any looseness of associations, flight of ideas, tangentiality, or circumstantiality. No evidence of any overt psychotic, delusional, or paranoid thinking. His mood was euthymic. Affect was mildly irritated and agitated with no overt suicidal/homicidal intent or plan. He was age appropriately oriented to time, place, and person.

(Tr. 254).

Dr. Tokhie diagnosed Plaintiff with attention deficit disorder and oppositional defiant disorder. (Tr. 255). Plaintiff was prescribed medication and he and his family were instructed to participate in counseling. (Tr. 255). Plaintiff and his family participated in counseling with Dr. Tokhie from August 2005, through May 2008. (Tr. 232-51, 296-99, 327-31).

On August 25, 2005, Plaintiff's first grade teacher completed a questionnaire regarding Plaintiff's functioning. (Tr. 116-23). The teacher reported that Plaintiff experienced a "very serious problem" in the following areas: (1) reading and comprehending written material, and (2) expressing ideas in written form. (Tr. 117). The teacher also reported that Plaintiff experienced "no problem" comprehending oral instructions and understanding school and content vocabulary and "a slight problem" recalling and applying previously learned material. (Tr. 117). With respect to Plaintiff's ability to attend and complete tasks, the teacher evaluated Plaintiff in ten different categories. (Tr. 118). In eight of the categories, the teacher reported that Plaintiff experienced either a "very serious problem" or a "serious problem." (Tr. 118). In two categories, the teacher reported that Plaintiff experienced only a "slight problem." (Tr. 118). The teacher further noted that Plaintiff "had very definite problems with attention span, but he was also defiant." (Tr. 118).

5

On September 9, 2005, Plaintiff was examined by John Jeter, M.A., C.S.W., and Hugh Bray, Ph.D. (Tr. 143-49). Plaintiff's mother reported that Plaintiff performs his own grooming, hygiene, bathing, and dressing activities with assistance. (Tr. 145). She reported that Plaintiff "does an age appropriate job taking out the trash and a good job of vacuuming and folding the clothes." (Tr. 145). The examiners noted that Plaintiff "was marginally cooperative, marginally motivated, was minimally responsive and was oppositional and defiant." (Tr. 145). Plaintiff "did attempt all tasks" and "his responses were within normal time limits with support." (Tr. 145). With respect to Plaintiff's "motor behavior," the examiners reported, "[h]is motor behavior was elevated to the extent of meeting the criteria of ADHD (mild), but more Oppositional and Defiant." (Tr. 145). Plaintiff was diagnosed with Oppositional Defiant Disorder (moderate) and ADHD (mild). (Tr. 148). His GAF score was rated as 65. (Tr. 148).

On September 19, 2005, Dr. Paul Liu, Child Psychiatrist, completed a report assessing Plaintiff in several domains of functioning. (Tr. 150-55). Specifically, the doctor reported that Plaintiff's limitations were "less than marked" in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) health and physical well-being. (Tr. 152-53). The doctor also reported that Plaintiff experienced "no limitation" in the following domains: (1) moving about and manipulating objects; and (2) caring for himself. (Tr. 153).

On March 20, 2006, Risha Kuhn, Certified School Psychologist, completed an evaluation of Plaintiff. (Tr. 158-63). Kuhn observed Plaintiff "in his general education class during a language arts lesson." (Tr. 159). Kuhn reported that when "students were asked to take out a pencil and paper," Plaintiff "seemed to have a delayed response and did not immediately comply."

6

(Tr. 159). Kuhn further observed, however, that in a "one-to-one setting" Plaintiff was "very cooperative with all task demands and approached all problem solving tasks willingly." (Tr. 159). She reported that Plaintiff "followed directions well and responded to the majority of the test items in a thoughtful manner." (Tr. 159). Kuhn concluded that:

> Behavior observations indicate [Plaintiff] struggles with behaviors associated [with] his Attention Deficit Hyperactivity Disorder (ADHD). During mid-morning hours, he becomes very active, easily distracted, and has difficulty completing assignments. Information provided by parent and school staff revealed [Plaintiff] recently had a medication change and there is a reported medical debate whether his medication (Focalin XR) timed release is appropriate. [Plaintiff's] ADHD behaviors seem to interfere with his ability to optimally perform in the classroom group setting without special education support. Therefore, eligibility under the Otherwise Health Impairment (OHI) category is recommended at this time due to adjustments in his medications.

(Tr. 163).

School records completed during the 2005/2006 academic year indicate that:

> [Plaintiff] often struggles paying attention and listening. This greatly interferes with his learning and his academic growth. He is currently performing below grade level.

(Tr. 166-67).

School records dated January 22, 2007, indicate that Plaintiff "has made improvement in his behavior." (Tr. 257).

In March 2007, school officials completed an Individualized Education Program Team (IEPT) Report concerning Plaintiff's progress. (Tr. 198-207). The report indicated that Plaintiff "struggles to stay on task, organize his work and complete assignments." (Tr. 201). The report also indicated that Plaintiff "has difficulty following school and classroom rules; struggles with appropriate interactions w/ peers." (Tr. 201).

7

School records completed during the last quarter of the 2006/2007 academic year indicate that:

> [Plaintiff] has worked hard controlling his behavior. Doing Great! [Plaintiff] has done a great job both academically [and] with his behavior this quarter.

(Tr. 174).

On March 17, 2008, school officials completed an Individualized Education Program Team (IEPT) Report concerning Plaintiff's progress. (Tr. 302-11). The report indicated that:

> With assistance reading comprehension is at a mid 3rd grade level all other areas are at or near grade level. Task completion depends on [Plaintiff] wanting to do the task. He may do more work if adult one on one is given. [Plaintiff] can occasionally be defiant toward an adult if pushed to do what he doesn't want to do. [Plaintiff's] poor social interactions with peers [and] other[s] further hinder his school progress. It appears [Plaintiff's] mood can drive his behavior.

(Tr. 303).

On June 15, 2008, Dr. Tokhie completed a report assessing Plaintiff in several domains of functioning. (Tr. 333-34). Specifically, the doctor reported that Plaintiff's limitations were "marked" in the following domains: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. (Tr. 333). The doctor reported that Plaintiff experienced "no limitation" in the following domains: (1) moving about and manipulating objects; (2) caring for himself; and (3) health and physical well-being. (Tr. 334).

# ANALYSIS OF THE ALJ'S DECISION

## A. Applicable Standards

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

## B. The ALJ's Decision

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from attention deficit hyperactivity disorder and oppositional defiant disorder. (Tr. 14). At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet or medically equal any impairment

identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ further determined that Plaintiff's impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (Tr. 16-22).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

（i）  acquiring and using information,
(ii)   attending and completing tasks,
(iii)  interacting and relating with others,
(iv)   moving about and manipulating objects,
(v)    caring for yourself, and
(vi)   health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that Plaintiff experienced marked limitation in his ability to interact and relate with others. (Tr. 19-20). The ALJ found that Plaintiff experienced less than marked limitation in the following areas: (a) acquiring and using information, (b) attending and completing tasks, and (c) health and physical well being. (Tr. 18-22). Finally, the ALJ found that Plaintiff experienced no limitation in his ability to move about and manipulate objects or care for himself. (Tr. 20-21). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

1.    The ALJ Properly Evaluated the Medical Evidence

As previously observed, on June 15, 2008, Dr. Tokhie opined that Plaintiff suffers from "marked" limitations in the following domains: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. Plaintiff asserts that because Dr. Tokhie was his treating physician, the ALJ was obligated to afford controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ agreed with Dr. Tokhie that Plaintiff experiences a "marked" limitation in the area of interacting and relating with others, but found that Plaintiff experiences "less than marked" limitations in the domains of (1) acquiring and using information; and (2) attending and completing tasks.

A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is "more than moderate," but "less than extreme" and is the equivalent of "the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

a. Acquiring and Using Information

With respect to this particular domain, Social Security regulations provide that a child between the ages of 6-12 "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). The regulations also identify examples of "limited functioning" in the domain of acquiring and using information, including: (1) an inability to demonstrate understanding of words about space, size, or time; (2) difficulty recalling important things learned in school; (3) difficulty solving mathematics questions; and (4) speaking only in short, simple sentences and experiencing difficulty explaining what you mean. 20 C.F.R. § 416.926a(g)(3).

As the record detailed above reveals, Plaintiff made progress and improvement in his academic performance and ability from year to year. As the ALJ noted, Plaintiff "has reasonably good measured intelligence and is close to grade level in most subjects. Is able to pose questions and express own ideas." (Tr. 18). As Dr. Tokhie's opinion concerning this particular domain is contradicted by substantial evidence of record, the ALJ properly afforded it limited weight.

b. Attending and Completing Tasks

With respect to this particular domain, Social Security regulations provide that a child between the ages of 6-12 "should be able to focus [his] attention in a variety of situations in order to follow directions, remember and organize [his] school materials, and complete classroom and homework assignments." 20 C.F.R. § 416.926a(h)(2)(iv). Such a child "should be able to sustain [his] attention well enough to participate in group sports, read by [himself], and complete family chores." *Id.* The regulations also identify examples of "limited functioning" in this domain,

13

including: (1) the child is slow to focus on, or fails to complete activities of interest; (2) the child "repeatedly" becomes sidetracked from his activities or "frequently" interrupts others; and (3) the child is "easily frustrated and give[s] up on tasks, including ones [he] is capable of completing." 20 C.F.R. § 416.926a(h)(3).

Again, the record indicates that Plaintiff made progress and improvement in this particular area. As the ALJ noted, Plaintiff "has some trouble with focus and organization, but has shown improvement on psychostimulant medication. He reportedly responds well to smaller classroom settings and redirection." (Tr. 19). As Dr. Tokhie's opinion concerning this particular domain is contradicted by substantial evidence of record, the ALJ properly afforded it limited weight. In sum, the ALJ's decision to afford less than controlling weight to Dr. Tokhie's opinion is supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 2, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge